No. 28,901.

FERN LAMB, *Appellee*, v. THE LIBERTY LIFE INSURANCE COMPANY, *Appellant*.

(282 Pac. 699.)

Opinion filed December 7, 1929.

*Thos. D. Winter*, of Girard, and *E. W. Patterson*, of Pittsburg, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one to recover on an accident insurance policy for the death of plaintiff's husband. Plaintiff prevailed, and the defendant appeals.

The facts were substantially these: Plaintiff's husband held an accident policy in the defendant company in which the plaintiff was named beneficiary. The policy provided for payment if the insured

was killed while operating, driving, riding in or on, demonstrating, adjusting or cranking an automobile, or in consequence of being struck, run down or over; or death caused by the burning or explosion of an automobile; but did not cover loss or death resulting from or in consequence of the insured performing the duties of a mechanic in repairing, overhauling or testing an automobile. Plaintiff's amended petition alleged that the injuries sustained by her husband were without any voluntary or intentional act on his part; that his injury and death were caused wholly by accidental means and that they did not result while the insured was performing the duties of a mechanic in repairing, overhauling or testing an automobile. The defendant answered by denying generally the affirmative parts of the petition and affirming the negative parts last above mentioned; that is to say, the defendant challenged the allegation that the deceased was not killed while performing the duties of a mechanic in repairing, overhauling or testing an automobile.

.The deceased at the time of the issuance of the policy was in the employ of one C. E. Diel, of Girard. This employment continued for a period of eleven months, until Lamb's death. There was evidence to the effect that it was Lamb's duty to perform general work around the garage and service station; that on March 10, 1927, one S. A. Williams made arrangements to rent a big-six Studebaker automobile from Diel. Diel testified that this car was in good mechanical condition, as he had worked on it a day or so before. Lamb was instructed to drain oil from the car and fill it with gasoline, but he did no mechanical work thereon. After Lamb had serviced the car he and Williams took a ride in it and while on this ride collided with another car and Lamb was killed. The evidence showed that Diel permitted Lamb to drive his (Diel's) car when he so desired; that on the occasion in question Diel did not order Lamb to take the car out or to test it and did not know that he had done so.

The defendant contends that in order for the plaintiff to recover it was necessary for her to prove that Lamb was not testing the automobile at the time he was injured. On the other hand, the plaintiff argues that the clause in the policy providing, "but the insurance hereunder does not cover loss resulting from or in consequence of performing the duties of a mechanic in repairing, overhauling or testing an automobile,"- is a specific exception to the general terms of the policy; that if the defendant seeks to avoid

liability on the ground that the accident occurred while the insured was performing the duties of a mechanic, the burden of proof is on the defendant to prove the facts which bring the case within this exception. In *Sears v. Insurance Co.*, 108 Kan. 516, 196 Pac. 235, it was said in the opinion:

"Touching the burden of proof, the well-established rule is that when an insurer seeks to avoid liability on the ground that the accident or injury for which compensation is demanded is covered by some specific exception to the general terms of the policy, the burden rests upon the insurer to prove the facts which bring the case within such specified exception. (1 Cyc. 290; 1 C. J. 497.)

"In 14 R. C. L. 1437, it is said: 'Where proof is made of a loss apparently within a policy, the burden is on the insurer to prove that the loss arose from a cause for which it is not liable. Accordingly while the plaintiff in an action on an accident policy must prove that the death was caused by accidental means, yet where *prima facie* evidence of that fact has been adduced the defendant must show that the death of the insured resulted from an excepted cause.'

"See, also, note and citations to *Preferred Acc. Ins. Co. v. Fielding*, 35 Colo. 19, in 9 Ann. Cas. 919, 921." (p. 519.)

The defendant contends that plaintiff cannot recover because the insured was violating the law at the time of his death. A statute then in force provided:

"Upon approaching a railroad crossing or intersection of highways outside of any village or city, or turning corners, the person operating a motor vehicle shall reduce the speed of such vehicle to a rate not exceeding eight miles an hour, and shall not exceed such speed until entirely past such crossing or intersection. The governing bodies of all cities are hereby authorized to regulate by ordinance the speed of motor vehicles within the limits of such cities." (Laws 1925, ch. 84.)

The defendant introduced in evidence an ordinance of the city of Girard which limits the speed of an automobile to twelve miles per hour for street traffic and six miles when crossing intersections. The plaintiff contends that the question was not raised in defendant's answer and is therefore not properly an issue; that defendant having raised the question in the trial, as a matter of defense, it had the burden of proof to show that the insured was exceeding the speed limit at the time of his death. Only one witness testified as to the speed of the car driven by the deceased. This witness was standing in a filling station a short distance from where the accident occurred. His opinion was that Lamb's car was going from twelve to fifteen miles an hour at the time of the accident and twenty-five miles before it slowed up.

The defendant submitted special questions to the jury relative to the speed of the car. First: At what rate of speed was Lamb's car going at the time of the collision? Second: At what rate of speed was Lamb's car going before it reached the intersection of the streets where the collision occurred? The jury answered both questions by saying they did not know. Upon defendant's request the court instructed the jury to retire to the jury room and answer the first question more definitely. Upon returning the foreman of the jury informed the court that the jury knew of no way to answer the question except that "we don't know," saying: "I don't think the witness knew how fast the car was going. It was just a guess on his part."

The plaintiff argues that the testimony as to the speed of the automobile was merely the estimate and opinion of the witness, and the jury was not compelled to accept such statement as true, even though it was uncontradicted. Also, that the jury's answer, "we don't know," had the effect of finding against the defendant since it was incumbent on defendant to prove the facts on which it relied as a defense.

We will endeavor to dispose of plaintiff's contentions in their order. First: The failure of the defendant to plead a violation of law by the insured, in its answer, is of no consequence since the issue was fully tried out. (*Trousdale v. Amerman,* 124 Kan. 614, 261 Pac. 826, and cases cited.) Second: It is perfectly apparent that the jury did not do its duty with respect to answering the questions. As a result of Lamb's driving and in direct consequence thereof he lost his life. It appears he was going so fast that he could not stop although he applied his brakes, and his car, after it collided with the other car, turned completely over, landing beyond the intersection. We doubt whether it was humanly possible for this to have occurred had he not been going at a greater speed than six miles per hour. In any event, there was an issue presented on which the defendant was entitled to an answer. The purpose of the provision exempting an insurance company from liability for loss sustained while the insured is violating the law is not only to discourage violation of law but to eliminate the extra hazard which comes from the violation thereof. This applies to a violation of a city ordinance relating to traffic as fully as to direct violation of a state law. Provisions in policies exempting the company from liability where the loss occurs as a result of violation of law are quite uniformly upheld. (See 1 C. J. 457 *et seq.*

and notes; also, 17 A. L. R. 1011.) *Witt v. Spot Cash Ins. Co.,* 128 Kan. 155, 276 Pac. 804, is a recent case where recovery was denied because the insured violated the law. There the accident occurred outside the limits of a city. That case and the authorities cited therein appear to sustain the contention of the defendant in the instant case.

The judgment is reversed and the cause remanded for a new trial.

HARVEY, J., dissenting.