No. 35,551

HAROLD H. STEPHENS, *Appellee*, v. FRANK FARWELL et al.,
*Appellants*.

(126 P. 2d 489)

Opinion filed
June 6, 1942.

*E. D. Mikesell*, of Fredonia, argued the cause for the appellants.

*T. D. Hampson*, of Fredonia, argued the cause, and *P. W. Stephens*, of Neodesha, and *W. H. Edmundson*, of Fredonia, were on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: Plaintiff instituted this suit to establish his interest in certain real estate. A judgment was rendered in his favor, and defendants' motion for a new trial being overruled, they appeal to this court, their specifications of error covering the matters hereafter discussed.

Omitting formal parts, the amended petition, hereafter called the petition, alleged that on February 8, 1934, Clarence Stephens and wife, predecessors in title of the plaintiff, were the owners of three tracts of real estate, and were indebted to Chas. B. Farwell in the sum of $1,085, secured by a mortgage on the real estate, and on that date the Stephenses executed to Farwell a quitclaim deed, which though absolute in form was intended by the parties to be a mortgage and security for the loan; that on the same day an agreement headed "Option on Real Estate" was entered into by Stephens and wife and Farwell wherein it was agreed that if Stephens would pay Farwell $1,085 with interest on or before eighteen months thereafter Farwell would reconvey the property. Of this property one tract

was a farm subject to an oil and gas lease, from which, when suit was filed there were moneys impounded, one tract was a small residence from which plaintiff had received rents, and the other tract was a residence rented to one of the defendants. Under the above agreement Farwell agreed to convey to Clarence Stephens and wife within eighteen months on their payment to him of $1,085 with interest and any taxes paid by Farwell. This agreement was extended four times and $1,300 was paid thereon. The petition further alleged the payment of that sum and also that certain rent moneys were due, and that by assignment from Clarence Stephens and wife of the above contract, plaintiff became the owner and holder of all their interest. It was also alleged that Chas. B. Farwell died in November, 1935, after he had received the $1,300 on the contract and that his sons Frank and Henry were appointed as executors of his estate; that efforts to make settlement had been made, but that the executors refused to make settlement without an order of court directing them to do so. Plaintiff claimed that by reason of the payments made, and the rentals due, there should be an accounting, and if any sum was found due to defendants, plaintiff was ready, able and willing to pay the same into court. His prayer was that the court determine the rights between parties and that he have judgment establishing his title. Defendants' demurrer to this petition was overruled, the ruling is assigned as error and will be mentioned later.

The defendants answered at length. Very briefly stated, they set up a history of the taxes, rents, etc., on each tract, alleged the deed to C. B. Farwell was absolute; that Stephens had failed to perform the option contract; that Stephens had filed no claim against the estate of Farwell; that while defendants insisted the petition stated no cause of action, if any existed it was barred by the statute of limitations, etc.

At the commencement of the trial, defendants objected to the introduction of evidence because the petition did not state a cause of action, because no claim had been filed against the Farwell estate, and because any action on the contract of February 8, 1934, was barred by the statute of limitations. This objection was overruled and the trial proceeded.

The trial court made extensive and detailed findings of fact, which we summarize. On August 22, 1931, Clarence Stephens and wife delivered to C. B. Farwell, also referred to as Chas. B. Farwell, their

note for $1,000 due in five years secured by mortgage on the involved real estate and on February 8, 1934, they delivered a quitclaim deed to Farwell, reserving to themselves the use, rents and profits for eighteen months. On the last-mentioned date Farwell executed an instrument entitled "Option on Real Estate," heretofore mentioned in reviewing the petition, also a lease for eighteen months. On August 5, 1935, the option was extended and thereafter Stephens paid Farwell $1,300. The total assessed value of the real estate in 1934 was $3,685. Farwell died testate on November 18, 1935, and his sons Frank and Henry were appointed executors. Thereafter several conferences were held by the parties in interest and about September 3, 1936, a statement was prepared showing that the loan was $1,085 and that interest, taxes and repairs added made a total of $2,187.50; that $1,300 had been paid, there was a rent credit of $180 and that the balance due on the last date was $707.50. There was also a finding the Stephenses had collected oil royalties of $293.98 while in possession after March, 1934, and that there were impounded oil royalties of $269.56. Omitting detailed references to the several tracts, etc., the court found the transaction was intended by all the parties as a sale and purchase of real estate, and after setting up details of the accounting, found there was due a balance of $1,324.96, which should bear interest from November 13, 1941, and that the costs of the action should be divided, and that the plaintiff should have six months in which to make payment, failing which, plaintiff's interest in the real estate should be forfeited; that in the event plaintiff make the payment then he is entitled to receive the impounded oil royalties, and if he fail, the impounded royalties should be paid to the defendants. The conclusions of law were consistent with the findings.

The defendants filed their exceptions to the findings and conclusions as made, and for the substitution of those requested by them. We note only their specific request that the court conclude the plaintiff's claim was one enforceable only against the estate of Charles B. Farwell and barred by the probate code. The defendants also moved for a new trial. These motions were denied and the trial court rendered judgment in accordance with its findings and conclusions.

Appellants contend the petition did not state a cause of action. It is first contended the plaintiff pleads a deed and says it is not a deed but a mortgage, then pleads the option for the purchase of real

estate, which negatives the allegation the deed was a mortgage; that the terms of the option contract are so absolute and certain there is no room for either pleading or evidence to the contrary (*Fabrique v. Mining Co.*, 69 Kan. 733, 77 Pac. 584); that plaintiff does not allege performance further than payment of $1,300, and there is no allegation that payment was made on the debt; that time was of the essence of the contract, and that a circumstance which shows plaintiff did not rely on the deed as being a mortgage is that he took from his father and mother an assignment of the option contract and not a deed. To support all of the above contentions defendants direct our attention to the petition as well as to matters arising during the trial.

The gist of the contention made is that the petition was not framed upon a distinct and definite theory and is supported primarily by the first section of the syllabus of *Grentner v. Fehrenschield*, 64 Kan. 764, 68 Pac. 619. Our attention is directed to other cases where that case has been cited, among them being *Sluss v. Brown-Crummer Inv. Co.*, 137 Kan. 847, 22 P. 2d 965. In the latter case it was said:

"In *Grentner v. Fehrenschield*, 64 Kan. 764, 68 Pac. 619, it was held that plaintiff must frame his petition on a distinct and definite theory, and upon that theory the facts alleged must state a good cause of action. The case has been cited on a number of occasions, and the force thereof has been diminished." (Citing cases.) (p. 853.)

In other cases it has been held that inconsistent allegations do not make a petition demurrable. (See, e. g., *Fetzer v. Williams*, 80 Kan. 554, 103 Pac. 77; *Trousdale v. Amerman*, 124 Kan. 614, 261 Pac. 826.)

We are of opinion the trial court ruled correctly on the demurrer. The plaintiff pleaded all the facts of the various transactions, and his contentions with respect to them, all leading to his claim that he had an interest in the real estate; that the extent of his interest was in controversy; that possibly some sum was due to the defendants; that the court should determine that sum and he was ready, able and willing to pay it. The fact the court did not fully agree with his claim as to legal effect of the deed and option contract is not a reason for saying his petition was demurrable as not stating a cause of action.

It is apparent that plaintiff sought the aid of a court of equity to have determined his right in the premises. The suit is somewhat out of the ordinary, but it is of that class where the court has power

to apply settled rules to unusual conditions and to do equity. (*Marquez v. Cave,* 134 Kan. 374, 5 P. 2d 1081; *Stady v. The Texas Company,* 150 Kan. 420, syl. ¶ 5, 94 P. 2d 322.)

It is also contended the demurrer should have been sustained because the action was barred. The contention is that Farwell having died in 1935 and an administration then started, suit must have been started within one year, under G. S. 1935, 22-727. It may be observed that in 1935 the probate court was concerned with real estate only in the event it was necessary to sell the same for statutory reasons. The petition here makes it clear that the plaintiff or his parents, through whom he claims, were in possession of the three tracts of real estate at all times under an asserted claim of ownership, and except as they desired a settlement of their obligation to Farwell or his estate, they need never have commenced any suit. The decision in *Hurst v. Hammel,* 153 Kan. 827, 113 P. 2d 1045, the only case cited by appellants, does not support their contention. Under the facts alleged in the petition the only possible claim for money was that of defendants against the plaintiff, not one of plaintiff against the defendants or the estate of their ancestor.

The ruling of the trial court on the demurrer to the petition was correct.

Appellants' contentions as to the rulings on their objection to the introduction of evidence and their demurrer to plaintiff's evidence, are placed on the same grounds urged against the petition. We therefore do not discuss those rulings further.

Appellants also contend the trial court erred in the admission of testimony. Complaint is made that testimony of an attorney's secretary as to the statement of account as due September 3, 1936, previously mentioned, was a privileged communication. We think it clear the conversations leading up to the preparation of the statement were had not only between the attorney and his client, but as part of a general conference at which plaintiff's father and his attorney were present. There was no privilege under the circumstances. It is further objected that the only persons pretending to speak for the estate were the two executors, and that they could make no agreement affecting the status of the parties as it existed at the date of the death of Charles Farwell. The contention, as made, ignores the facts. The evidence indicates the conference was had between the several parties in interest to determine what was due to the estate under the contract. The last written extension of the contract was made November 9, 1935, when $100 was paid and

the time extended to December 30, 1935. One of the purposes of the testimony was to show that the parties in interest were treating the so-called option contract as a contract of purchase and sale and were dealing with each other on that basis.

It is also contended that where the contract is clear and unambiguous the construction is for the court without the aid of evidence. The rule is correct, but its application here is not so clear. The option contract of February 8, 1934, was one of three contracts, each of which was executed on the same day. One was a quitclaim deed, in which use, rents and profits for a period of eighteen months was reserved; another was a lease of the same property for a period of eighteen months for an expressed consideration of one dollar and other valuable consideration; and the third was the so-called option whereby Stephens had the right for eighteen months to purchase the property for $1,085 and interest and any taxes which Farwell might pay. The option was extended four times by written endorsements made thereon. The first extension was in consideration of the sum of one dollar and stated it was made to afford opportunity for the parties to work out a new contract. Shortly thereafter Stephens paid $1,000. Three subsequent extensions were made, $100 being paid on each extension. Farwell died shortly after the last payment was made. The evidence showed and the trial court found the assessed value of the real estate in 1934 was $3,685. In effect appellants complain because the trial court, instead of permitting them to keep the real estate, whatever its worth, as well also the $1,300 which had been paid, and to receive the impounded oil runs of $269.56, held that by the transactions of February 8, 1934, the parties intended a sale and purchase, as was evidenced among other things by the endorsements and payments, the possession of Stephens, the leasing by one of the Stephenses, the collection of royalties, the making of repairs, the statement of account of September 3, 1936, and the continued possession thereafter by the Stephenses.

Even though it be conceded that the so-called option contract could be divorced from the deed and lease made the same day, and that it could be treated as a pure option contract, the course of dealings between Charles B. Farwell, and after his death his executors, on the one hand and the Stephenses on the other shows that the contract was treated as for purchase and sale. Without further discussion we are of opinion the trial court treated the whole problem judiciously, fairly and equitably, and its judgment should be, and it is, affirmed.